## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

|  |  |
|---|---|
| In re,<br><br>Gary T. Fischbach,<br><br>                              Debtor. | C/A No. 10-02888-DD<br><br>Adv. Pro. No. 11-80036-DD<br><br>Chapter 7 |
| Gary T. Fischbach,<br><br>                              Plaintiff,<br><br>v.<br><br>Centers for Medicare and Medicaid Services,<br>Palmetto Government Benefits Administrators,<br>LLC,<br><br>                              Defendants. | **ORDER ON CROSS MOTIONS FOR<br>SUMMARY JUDGMENT** |

Gary T. Fischbach ("Plaintiff") and Centers for Medicare and Medicaid Services, Palmetto Government Benefits Administrators, LLC ("Defendants") filed Motions for Summary Judgment on November 28, 2011. Responses were filed on December 8, 2011. The Complaint in this adversary proceeding, filed on April 4, 2011, requests damages for violation of the discharge injunction and an injunction from further collection attempts on the part of Defendants. After considering the Motions, the Court now makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

Plaintiff filed for chapter 7 relief on April 22, 2010. Plaintiff is a physician in Aiken, South Carolina. At the time of his bankruptcy filing, Plaintiff owned and operated a family medical practice, which originally operated as a sole proprietorship, and beginning in 1999, operated as a limited liability company. In June 1999, Plaintiff became a participating supplier

for Medicare beneficiaries through a Medicare Participating Physician/Supplier Agreement. The agreement provided that it would be renewed automatically every twelve months absent some active termination by either party to the agreement; thus, the agreement remained in effect at all times relevant in this matter.

In October 2009, Plaintiff received notice that certain services Plaintiff had provided to Medicare beneficiaries were deemed not medically necessary and that as a result, Plaintiff had received overpayment of $397,453.46 for such services. Plaintiff attempted to appeal this decision in December 2009 by sending explanation and supporting documentation to Defendants. Defendants notified Plaintiff in January 2010 that the previous determination that Plaintiff had been overpaid would stand and that Defendants would begin collecting the overpayment within sixty (60) days. Plaintiff did not attempt to further appeal this decision.

In March 2010, Defendants notified Plaintiff that the Medicare claims he had submitted were insufficient to cover the outstanding balance of the overpayment, that the outstanding balance was actually $410,600.80, and that the balance would be referred to the Department of Treasury's Debt Collection Center. Plaintiff filed his chapter 7 case approximately a month later.

Plaintiff received his chapter 7 discharge on July 30, 2010. Defendants subsequently continued to withhold payments to Plaintiff for services he rendered to Medicare beneficiaries until Plaintiff's medical practice ceased operation. This adversary proceeding was commenced on April 4, 2011, alleging that Defendants violated the discharge injunction and seeking an injunction to prevent Defendants from withholding any further payments or attempting to collect any further amounts from Plaintiff.

## CONCLUSIONS OF LAW

### I.  Summary Judgment Standard

Pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure, Rule 56 of the

Federal Rules of Civil Procedure governs summary judgment in adversary proceedings.  *In re*

*Rigoroso*, 453 B.R. 612, 614 (Bankr. D.S.C. 2011).  Fed. R. Civ. P. 56(a) states, "The court shall

grant summary judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  "[T]he mere existence of *some*

alleged factual dispute between the parties will not defeat an otherwise properly supported

motion for summary judgment; the requirement is that there be no *genuine* issue of *material*

fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis original).  Only

factual disputes which could potentially affect the end result of the suit should cause a motion for

summary judgment to be denied; "irrelevant or unnecessary" factual disputes will not preclude

the entry of summary judgment. *Id.* at 248.  A dispute relating to a material fact is "genuine" if

"the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A court determining whether summary judgment should be granted should look to

multiple sources, including the pleadings, discovery responses, depositions, and affidavits, if

any. *Rigoroso*, 453 B.R. at 614 (quoting *In re Proveaux*, No. 07-05384-JW, slip op., at 5 (Bankr.

D.S.C. Mar. 31, 2008)).  The court should view the facts and any reasonable inferences "'in the

light most favorable to the nonmoving party.'" *Rigoroso*, 453 B.R. at 614 (quoting *United*

*Rentals, Inc. v. Angell*, 592 F.3d 525, 530 (4th Cir. 2010)).  Once the movant has presented

sufficient evidence to support its summary judgment motion, the burden shifts to the nonmoving

party to show that there are genuine issues of material fact. *Emmett v. Johnson,* 532 F.3d 291,

297 (4th Cir. 2008).  The nonmovant cannot "rest upon mere allegations or denials of his

pleading, but 'must come forward with specific facts showing that there is a genuine issue for trial.'" *Id.* at 297 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–88 (1986)). Here, the parties agree that no issues of fact for trial exist and therefore, the only issues are issues of law.

## II. Effect of Discharge

At the conclusion of an individual debtor's chapter 7 case, the debtor ordinarily receives a chapter 7 discharge which, with a few exceptions, "discharges the debtor from all debts that arose before the date of the order for relief." 11 U.S.C. § 727(b). The term "debt" is defined in the Bankruptcy Code as "liability on a claim." 11 U.S.C. § 101(12). "Claim", as used in the definition of "debt", is defined as:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5). The discharge operates as an injunction and prevents creditors from seeking to recover from the debtor personally. 11 U.S.C. § 524(a)(2).

The purpose of the discharge is to provide the "honest but unfortunate debtor" with a fresh start and a "'new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt.'" *Local Loan Co. v. Hunt*, 292 U.S. 234, 244–45 (1934) (citing *Stellwagen v. Clum*, 245 U.S. 605, 617 (1918); *Hanover Nat'l Bank v. Moyses*, 186 U.S. 181 (1902); *Gilbert v. Shouse*, 61 F.2d 398, 399 (5th Cir. 1932); *Hardie v. Swafford Bros. Dry Goods Co.*, 165 F. 588, 591 (5th Cir. 1908); *Barton Bros. v. Texas Produce Co.*, 136 F. 355, 357 (8th Cir. 1905); *Swarts v. Fourth Nat'l Bank*, 117 F. 1, 3 (8th Cir. 1902); *United*

*States v. Hammond*, 104 F. 862, 863 (6th Cir. 1900)). *See also Lines v. Frederick*, 400 U.S. 18,

19 (1970) (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244–45 (1934)). "The various

provisions of the Bankruptcy Act were adopted in the light of that view and are to be construed

when reasonably possible in harmony with it so as to effectuate the general purpose and policy of

the act." *Local Loan Co.*, 292 U.S. at 245. A court can enforce the discharge injunction and can

hold a creditor in contempt for violating the discharge injunction. *In re Dendy*, 396 B.R. 171,

178 (Bankr. D.S.C. 2008).

### III. Recoupment and Setoff

This case turns on the nature of the obligation between the parties and the effect of the

discharge on that relationship. The parties categorize the nature of the obligation between the

parties as either recoupment or setoff. Recoupment and setoff are two separate and distinct

concepts. The main distinction is "whether the debt owed the creditor . . . arose out of the 'same

transaction' as the debt the creditor owes the debtor." *In re Holyoke Nursing Home, Inc.*, 372

F.3d 1, 3 (1st Cir. 2004). *See also In re Georgetown Steel Co., LLC*, 318 B.R. 313, 325 (Bankr.

D.S.C. 2004) (citing Black's Law Dictionary (5th ed. 1979)). The doctrine of setoff allows a

creditor to offset a debt it owes to a debtor against a debt owed to it by the debtor arising from a

different transaction. *In re Univ. Med. Ctr.*, 973 F.2d 1065, 1079 (3d Cir. 1992). 11 U.S.C. §

553 addresses setoff and provides that a creditor cannot set off a pre-petition claim against a

post-petition debt it owes to the debtor. 11 U.S.C. § 553; *Univ. Med. Ctr.*, 973 F.2d at 1079.

Recoupment "'is the setting up of a demand *arising from the same transaction* as the plaintiff's

claim or cause of action, strictly for the purpose of abatement or reduction of such claim.'"

*Univ. Med. Ctr.*, 973 F.2d at 1079 (quoting 4 Collier on Bankruptcy ¶ 553.03) (emphasis

original). Recoupment is not subject to the same limitations as setoff; therefore, if the creditor's

claim arises out of the same transaction as the debt owed to the debtor, recoupment is permissible. *Id.* at 1080. The automatic stay does not apply to recoupment, and it is not prohibited by the discharge injunction. *In re Powell*, 284 B.R. 573, 576 (Bankr. D. Md. 2002). The justification for allowing recoupment in bankruptcy without limitations similar to those set forth in section 553 is that if the parties' claims against each other arise out of the same transaction, they are essentially defenses rather than mutual obligations and therefore, applying setoff limitations would be inequitable. *Univ. Med. Ctr.*, 973 F.2d at 1079–80 (quoting *Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir. 1984)). "In the bankruptcy context, recoupment has often been applied where the relevant claims arise out of a single contract 'that provide[s] for advance payments based on estimates of what ultimately would be owed, subject to later correction.'" *Id.* at 1080 (quoting *In re B&L Oil Co.*, 782 F.2d 155, 157 (10th Cir. 1986)) (alteration original).

In discussing recoupment and setoff, several courts have addressed what constitutes a single transaction and have defined "transaction" differently. Two primary tests have developed: the "logical relationship" test and the "integrated transaction" test. The "logical relationship" test, used by the Ninth Circuit, is the less strict of the two standards and allows for a series of occurrences to be part of the same transaction, depending on the occurrences' logical relationship. *Georgetown Steel*, 318 B.R. at 330. The Third Circuit, which utilizes the "integrated transaction" test, has stated, "For the purposes of recoupment, a mere logical relationship is not enough: the 'fact that the same two parties are involved, and that a similar subject matter gave rise to both claims, . . . does not mean that the two arose from the "same transaction."'" *Univ. Med. Ctr.*, 973 F.2d at 1081 (quoting *Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir. 1984)). Instead, "both debts must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting

its obligations." *Id.*   The Fourth Circuit has not explicitly ruled on the issue; however, bankruptcy courts in the Fourth Circuit suggest that the Fourth Circuit has implicitly endorsed the stricter, integrated transaction test.  *See Georgetown Steel*, 318 B.R. at 331; *In re Camellia Food Stores, Inc.*, 287 B.R. 52, 61 (Bankr. E.D. Va. 2002) ("While it appears the Fourth Circuit has . . . not adopted the logical relationship test, the integrated transaction test or some other test, the Fourth Circuit Court of Appeals nonetheless does offers [sic] guidance in interpreting the same transaction by continuing to define recoupment as claims arising out of the same contract.") (citing *Federal Deposit Ins. Corp. v. Marine Midland Realty Credit Corp.*, 17 F.3d 715, 722 (4th Cir. 1994); *First Nat'l Bank of Louisville v. Master Auto Serv. Corp.*, 693 F.2d 308, 310 n.1 (4th Cir. 1982)).

There are four appellate court decisions and several district and bankruptcy court decisions concerning recoupment of Medicare or Medicaid payments in the context of a bankruptcy case.  Those courts which have addressed the issue do not agree on the proper resolution.   Several courts, however, have found that recoupment of Medicare or Medicaid overpayments during a bankruptcy case is proper.  In *In re Holyoke Nursing Home, Inc.*, 372 F.3d 1 (1st Cir. 2004), the First Circuit allowed post-petition recoupment of pre-petition Medicare overpayments.   Holyoke Nursing Home was a chapter 11 debtor who was a participant in the Medicare Reimbursement Program.   *Id.* at 2.   Under the program, Holyoke received periodic reimbursement for services which it provided to Medicare patients. *Id.*  These payments were subject to annual audits, in which the reasonableness of the cost of the services was examined.   *Id.*   In 2000, it was determined that Holyoke had received overpayments totaling $373,639 in 1997 and 1998 and as a result, portions were deducted from Holyoke's future reimbursement payments. *Id.* at 3.  Holyoke then filed a chapter 11 petition and commenced an

adversary proceeding, alleging that pre-petition deductions constituted preferential transfers and that post-petition deductions violated Holyoke's automatic stay. *Id.*

The First Circuit first stated that the primary consideration was whether the original payments and the recoupment of the overpayments were part of the same transaction, such that the withholding of portions of payments made to Holyoke constituted recoupment rather than setoff. *Id.* The court recognized the lack of statutory guidance on the issue, and acknowledged that courts of appeals are split on the issue. *Id.* at 4. The court discussed the Third Circuit's decision in *University Medical Center*, which found that payments made in different years were for different medical services and therefore constituted different transactions. *Id.* The court then addressed the conclusion reached by several other courts, including the DC Circuit and the Ninth Circuit, that recovery of previous overpayments constituted part of the same transaction as the original payments. *Id.* ("These courts note that subsection 1395g(a) does not compartmentalize [the Health Care Financing Administration ("HFCA")]'s liability for provider services into a year-to-year determination, but that it expressly defines and modifies HCFA's liability for the provider's current cost-year services as the provider costs incurred in that year 'with necessary adjustments on account of previously made overpayments or underpayments.'"). The court stated, "[T]he interpretation favored by the District of Columbia Circuit and the Ninth Circuit has been embraced by the overwhelming majority of district and bankruptcy courts nationwide which have ruled to date." *Id.* For these reasons, the court held that the withholding of overpayments previously made to Holyoke was in the nature of recoupment and that it was not a preferential transfer or violation of the automatic stay. *Id.*

The Third Circuit reached a contrary decision in *University Medical Center.* In that case, the debtor, a "general care hospital," provided services to Medicare beneficiaries and received

reimbursement pursuant to a standard Medicare provider agreement. *Univ. Med. Ctr.*, 973 F.2d at 1069–70. The debtor filed a chapter 11 petition in January 1988, and one week after the filing, the debtor was notified that it had been overpaid for Medicare services it provided in 1985. *Id.* at 1070. The debtor was informed that withholding of future payments would begin immediately unless repayment was made or a long-term repayment schedule was established. *Id.* The debtor entered into a long-term repayment schedule with Blue Cross of Greater Philadelphia, its fiscal intermediary; however, it failed to provide certain documentation which Blue Cross required, and the debtor was notified that payments would again be withheld. *Id.* at 1070–71. A total of $312,000 was withheld from payments to the debtor post-petition. *Id.* at 1071. The debtor commenced an adversary proceeding, alleging that Blue Cross violated the automatic stay by withholding funds and requesting turnover and an award of attorneys' fees and costs. *Id.* The Third Circuit found that the payments made to the debtor in 1985 were for services separate and distinct from those provided in 1988, the payments from which Blue Cross was withholding. *Id.* at 1081–82. The court stated:

> The relationship between HHS and a Medicare provider entails transactions that last over an extended period. However, each of these transactions begins with services rendered by the provider to a Medicare patient, includes payment to the provider, and concludes with HHS's recovery of any overpayment. Recovery of the 1985 overpayment, therefore, is the final act of the transactions that began in 1985. [The debtor's] 1988 post-petition services were the beginning of transactions that would stretch into the future, but they were not part of the 1985 transactions. To conclude that these claims arose from the same transaction for the purposes of equitable recoupment would be to contort that doctrine beyond any justification for its creation. We conclude that the Department's post-petition withholding of the amount previously overpaid to [the debtor] cannot be considered as equitable recoupment.

*Id.* at 1081–82.

Some bankruptcy courts in this Circuit have stated that the Fourth Circuit has implicitly endorsed the test and rationale adopted by the Third Circuit in *University Medical Center.* In *In*

*re Camellia Food Stores, Inc.*, 287 B.R. 52, 61 (Bankr. E.D. Va. 2002), the court stated that it was "likely" that the Fourth Circuit would apply the integrated transaction test. *See also Georgetown Steel*, 318 B.R. at 330 (stating that the Fourth Circuit has not explicitly adopted either test but that it affirmed a Virginia bankruptcy case which applied the integrated transaction test). The court reached this conclusion based on the fact that the Fourth Circuit affirmed the bankruptcy court's holding in *In re Thompson*, 92 F.3d 1182 (4th Cir. 1996) (unpublished table decision). *Thompson* involved the attempted recoupment from a retired police officer's retirement benefits of previous overpayments of disability benefits. *Thompson*, 92 F.3d at *1. In its opinion, the bankruptcy court held that no right to recoup existed because the disability overpayments and the retirement benefits did not arise from the same transaction and set forth detailed reasoning supporting its conclusion. *In re Thompson*, 182 B.R. 140 (Bankr. E.D. Va. 1995). The bankruptcy court first pointed to the fact that Thompson's right to receive disability benefits was based on need and that he was required to periodically submit to medical examinations in order to continue receiving those benefits. *Id.* at 149. The court stated that each medical examination marked the beginning of a new and separate transaction with respect to Thompson's disability benefits. *Id.* The court then discussed the differences between Thompson's disability payments and his retirement benefits. *Id.* The court pointed out that the eligibility criteria for these two types of benefits differed significantly, as Thompson was required to submit to medical examinations and demonstrate need in order to receive disability payments, but merely had to complete 25 years of service as a police officer to be entitled to retirement benefits. *Id.* The court found that based on this difference, the benefits constituted separate transactions and therefore recoupment was not permissible. *Id.* On appeal, Thompson challenged several aspects of the bankruptcy court's opinion. *Id.* at *2. The Fourth Circuit

referred to the bankruptcy court's opinion and determined that no error was committed by the district court in affirming the bankruptcy court's opinion. *Id.*

Despite the fact that some courts believe the Fourth Circuit would apply the test endorsed by the Third Circuit, other courts in this Circuit have agreed with the First Circuit's decision in *Holyoke. See Ravenwood Healthcare, Inc. v. State*, No. MJG-06-3059, 2007 WL 1657421, at *5, *6 (D. Md. 2007) (finding, in a case involving Medicaid payments, that "pre-petition and post-petition payments amount to one transaction [and] thus, . . . recoupment is appropriate" and that the distinction between Medicaid and Medicare is irrelevant for purposes of such a determination); *In re Dist. Mem'l Hosp. of Sw. North Carolina, Inc.*, 297 B.R. 451, 455–56 (Bankr. W.D.N.C. 2002) ("[T]his court finds that the distinctive Medicare and Medicaid systems of estimated payments and later adjustments do constitute a single transaction for recoupment purposes. Such an exchange of funds may stretch over an extended period of time, reflecting a continuous balancing process between the parties. Nevertheless, Congress has indicated that a hospital provider's stream of services is to be considered one transaction for the purposes of any claim the government has against the provider. This relationship is not analogous to multiple, separate equipment purchases from a single supplier-which are clearly separate transactions. Instead, the [relationship] is . . . by agreement and by practical operation–one continuous transaction."). *But see In re Colonial Health Investors, LLC*, No. 00-51124, 2001 WL 34388127 (Bankr. W.D.N.C. 2001) (agreeing with the result in *University Medical Center* and finding that Medicaid payments for each year are separate and distinct transactions); *In re Quality Link-Bertie, LP*, No. 00-51125, 2001 WL 34388128 (Bankr. W.D.N.C. 2001) (agreeing with the decision in *University Medical Center* and distinguishing the D.C. Circuit's opinion in *United*

*States v. Consumer Health Servs. of Am., Inc.*, 108 F.3d 390 (D.C. Cir. 1997), which allowed

recoupment, because it involved Medicare, not Medicaid, as involved in *Quality Link-Bertie*).

　　While the Medicare cases discussed above do not deal with recoupment in a violation of

discharge injunction proceeding, courts have discussed the doctrine of recoupment in a violation

of discharge injunction proceeding in other contexts.　　Courts have generally held that the

discharge injunction does not apply to prohibit recoupment.　*Powell*, 284 B.R. at 576 (Bankr. D.

Md. 2002) (citing *Thompson v. Bd. of Trs. of the Fairfax Co. Police Officers Ret. Sys. (In re*

*Thompson)*, 182 B.R. 140, 146 (Bankr. E.D. Va. 1995)).　In *Powell*, the debtor received through

her employer certain health benefits under a group benefits plan ("Fund").　*Id.* at 574.　After she

was injured in a car accident, the debtor received advanced funds from the Fund, which the

debtor was required to reimburse if she received recovery from another source.　*Id.* at 575.　If the

debtor failed to repay the funds she received, the plan's terms were that the amount advanced

could be recovered by offsetting the advanced amount against any future payments.　*Id.*　The

debtor later received settlement funds from a third party as a result of the accident, but failed to

reimburse the Fund.　*Id.*　She subsequently filed bankruptcy.　*Id.*　After the debtor received her

discharge, the Fund withheld benefits the debtor was entitled to receive under the plan and offset

them against the amount owed for reimbursement.　*Id.*　The debtor brought an adversary

proceeding against the Fund, alleging violation of the discharge injunction.　*Id.*　The court

granted summary judgment for the Fund.　*Id.* at 579.　The court found that the withholding of

benefits constituted recoupment, stating that because there was a single contract between the

parties for the single purpose of providing health benefits to the debtor, "[n]either the passage of

less than 2 years from when Debtor's obligation to repay arose to the recoupment nor the

intervention of the automatic stay [sic] [or] Debtor's discharge in bankruptcy alters or breaks the singleness of the transaction." *Id.* at 579.

Several courts have found in the context of veterans' benefit overpayments that recoupment is permissible and does not violate the discharge injunction.  In *In re Snodgrass*, 244 B.R. 353 (Bankr. W.D. Va. 2000), which Plaintiff discusses in his Motion, the court found that the Department of Veteran Affairs ("VA") could recoup a special separation benefit from the debtor by withholding a portion of his disability compensation payments.  When he separated from the military, the debtor received a special separation benefit, and was subsequently granted disability compensation by the VA.  *Id.* at 354.  The VA then notified the debtor that it would begin recouping the separation benefit previously paid by withholding a portion of the debtor's disability benefits.  *Id.*  The debtor subsequently filed his chapter 7 petition.  *Id.*  After the VA continued to withhold a portion of the disability benefits, the debtor filed an adversary proceeding alleging that the VA had violated the discharge injunction.  *Id.*  The court relied on *In re Boyd*, 223 B.R. 536 (Bankr. E.D. Ark. 1998) and simply stated, "The facts of *Boyd* are substantially similar, if not identical, to the facts in the case at bar.  The analysis in *Boyd* of the law is applicable to the case at bar.  In granting the motion for summary judgment in favor of the VA, this court adopts the reasoning and holding in *Boyd.*"  *Id.* at 355.

*Boyd*, relied on by the court in *Snodgrass* and also discussed at length in Plaintiff's Motion, involved nearly identical facts.  The court in *Boyd* cited 10 U.S.C. § 1174(h)(2), which allows the United States to recoup separation pay from future disability benefits.  *Boyd*, 223 B.R. at 537.  The court reasoned that despite the government's ability to recoup payments from the debtor, the debtor did not owe a debt to the government and the government could therefore not sue the debtor as a result of the overpayment.  *Id.*  The court then stated, "Although few courts

have addressed this issue, the decisions are clear and uniform.  Since the statutory directive to

recoup the readjustment pay is not a debt or claim, there is no debt to discharge under

Bankruptcy Code section 727 and the United States is entitled to recoup the readjustment pay."

*Id.* (citing *United States Dep't of Veterans Affairs v. Keisler (In re Keisler)*, 176 B.R. 605

(Bankr. M.D. Fla. 1994); *Newman v. Veterans Admin.*, 35 B.R. 97 (Bankr. W.D.N.Y. 1983);

*Dwyer v. United States*, 26 B.R. 366 (Bankr. S.D. Ohio 1982)).  *See also In re Beaumont*, 586

F.3d 776 (10th Cir. 2009) (finding that recoupment of VA disability benefits based on a change

in the debtor's income after the debtor received a substantial inheritance did not violate the

automatic stay or discharge injunction).

Courts have also found recoupment permissible in a variety of other contexts.  *See In re

Jones*, 289 B.R. 188 (Bankr. M.D. Fla. 2002) (finding that the State Patrol could properly recoup

disability overpayments made to former state trooper without violating the debtors' discharge

injunction); *In re Sigman*, 270 B.R. 858 (Bankr. S.D. Ohio 2001) (finding recoupment by health

insurance company of overpayments due to the debtor's receipt of Social Security benefits was

permissible and not a violation of the discharge injunction); *Brown v. Gen. Motors Corp.*, 152

B.R. 935 (W.D. Wis. 1993) (holding that General Motors Employee Pension Plan could recoup

payments made to the debtor based on the debtor's receipt of social security disability benefits

and provision in pension plan stating that certain benefits would cease upon receipt of social

security).

In his Motion, Plaintiff presents several arguments. Plaintiff first discusses *Snodgrass* and

*Boyd* at length and then argues that because the Medicare Act, unlike the applicable law in

*Snodgrass* and *Boyd*, authorizes Defendants to pursue collection actions against Plaintiff in the

event Plaintiff does not repay the overpayment, those cases are distinguishable from the present

case and other cases involving Medicare.   Plaintiff also discusses the First, Ninth, and DC

Circuits' holdings in favor of the allowance of recoupment, but contends that these holdings only

apply to "providers" rather than "suppliers."[1]   Plaintiff contends that because he is a "supplier",

he is paid in a different manner from "providers" and therefore, recoupment is not applicable and

the Court of Appeals cases approving of recoupment are distinguishable from the present case.

Defendants' Motion and Objection to Plaintiff's Motion argue that Medicare recoupment

is not limited by bankruptcy and is a fundamental element of the Medicare payment system.

Defendants contend that the withholdings which occurred in the present case are clearly within

the scope of the recoupment permitted under Medicare law and states that Plaintiff "grossly

misreads the Medicare statute" in an attempt to argue that the withholding did not constitute

recoupment.   Defendants' Objection to Plaintiff's Motion, docket #37, at 8.    Defendants point

out that they are not attempting to assert a claim for payment through recoupment but rather

simply making an adjustment to account for previous overpayments.   Defendants argue that the

recoupment authorized in the Medicare Act applies to both providers and suppliers and therefore

the distinction is immaterial.

Plaintiff construes the Medicare Act too narrowly.   The Medicare Act's provision for

offsetting overpayment is broad and clearly evidences Congress's intention to allow recoupment

from all Medicare participants, including both providers and suppliers.   Congress intended that

Medicare participants be reimbursed quickly for services which they provide, and in order to

accomplish that goal, a constant balancing between reimbursements and overpayments occurs.

For this reason, recoupment is a necessary and intended piece of the Medicare payment system

---

[1] 42 U.S.C. § 1395x(d) defines a "supplier" as "unless the context otherwise requires, a physician or other
practitioner, a facility, or other entity (other than a provider of services) that furnishes items or services under this
subchapter."  A "provider of services" is defined as "a hospital, critical access hospital, skilled nursing facility,
comprehensive outpatient rehabilitation facility, home health agency, hospice program, or, for purposes of section
1395f(g) and section 1395n(e) of this title, a fund."  42 U.S.C. § 1395x(u).

for both suppliers and providers.  This Court finds it proper to give effect to Congress's intent and policies to permit recoupment in the circumstances of this case.

The Court therefore agrees with and will adopt the reasoning and holdings in the opinions of the First, Ninth, and DC Circuits and the majority of other courts addressing this issue.  The Third Circuit's approach is too narrow and difficult to apply and undermines the purpose and policies of the Medicare system.  The Third Circuit's opinion in *University Medical Center* has also been heavily criticized by other courts.  As stated above, Congress clearly expressed the intention to allow recoupment of overpayments from both providers and suppliers, and *University Medical Center* does not give sufficient deference to that intent.

While some courts in this Circuit have speculated that the Fourth Circuit, if addressing the issue, would apply the integrated transaction test used by the Third Circuit in *University Medical Center,* those courts' conclusions are based on an unpublished opinion, in which the Fourth Circuit affirmed a decision concerning two clearly separate transactions involving disability and retirement benefits.  The situation in *Thompson* was markedly dissimilar to the present case.  *Thompson* involved two separate types of benefits which were awarded based on different eligibility criteria.  Here, the payments from which Defendants sought recoupment were the same form of payments as the previous overpayments and arose from the same Medicare reimbursement agreement as the previous overpayments.   The payments and subsequent recoupment between Plaintiff and Defendants were an ongoing, continuous balancing occurring under a single contract and constituted a single transaction. Defendants' recoupment from Plaintiff was not a violation of Plaintiff's discharge injunction and further, Defendants are not

enjoined from recouping future payments to Plaintiff, if any, under the parties' Medicare Participating Physician/Supplier Agreement.[2]

## **CONCLUSION**

For the reasons set forth above, Defendants' Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied.  No violation of the discharge injunction occurred, and there is no basis to enjoin Defendants from future recoupment in compliance with the Medicare Act.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**01/09/2012**



David R. Duncan
US Bankruptcy Judge
District of South Carolina

Entered: 01/10/2012

---

[2] Although the issue is not before the Court, the Court notes that to the extent the debt is not recoverable under Medicare law, no contention was made by Defendants that any debt Plaintiff owed to Defendants was not discharged in his chapter 7 case.